Martin Resendez Guajardo, *In Pro Per*
555 Clay Street
San Francisco, California 94111
Tel: (415) 398-3852
Fax: (415) 296-8730

FILED

APR 1 1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT
## FOR THE  NORTHERN DISTRICT OF CALIFORNIA

MARTIN RESENDEZ GUAJARDO,

        Plaintiff,

    vs.

MICHAEL B. MUKASEY, United States
Attorney General,
BOARD OF IMMIGRATION APPEALS,
U.S. DEPARTMENT OF HOMELAND
SECURITY,
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW,
Immigration Court,

        Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

CV 08    1929

Agency Case No.: D2007-319

E-filing

PJH

### PLAINTIFF'S VERIFIED COMPLAINT FOR WRIT IN THE NATURE OF INJUNCTIVE AND DECLARATORY RELIEF

COMES NOW, MARTIN RESENDEZ GUAJARDO, Plaintiff in the above-styled and numbered cause, and for cause of action would show unto the Court the following:

1. This is an action for injunctive and declaratory relief, authorized by: 28 U.S.C. §1331, 28 U.S.C. §1361, the mandamus statute; 28 U.S.C. § 2201, the Declaratory Judgment Act; 5 U.S.C. §702, the Administrative Procedure Act; and the United States Constitution.

2. Plaintiff files this action to compel the Defendants to set aside an order of immediate suspension entered on March 5, 2008 suspending the Plaintiff from practice before the

1

Board of Immigration Appeals, the Immigration Courts and the Department of Homeland Security.

PARTIES

3.    Plaintiff Martin Resendez Guajardo is an attorney admitted to the State Bar of California on December 9, 1977 (State Bar No.: 75605). At the time of the filing of this petition, he remains a member of the bar and may practice law in California. *See* http://members.calbar.ca.gov/search/member_detail.aspx?x=75605 (last visited on March 22, 2008). He was admitted to the Bar of the Ninth Circuit Court of Appeals on January 12, 1983 but resigned on June 26, 2007 with charges pending against him. Based on this resignation, the Board of Immigration Appeals entered an order of immediate suspension on March 5, 2008 pending the conclusion of disciplinary proceedings.

4.    Defendant Board of Immigration Appeals is the entity with the authority to "impose disciplinary sanctions against any practitioner if it finds it to be in the public interest to do so." 8 C.F.R. §1003.101(a).

5.    Defendant Michael B. Mukasey is the Attorney General of the United States and is responsible for the administration of the immigration laws under 8 U.S.C. §1103 and the implementation and enforcement of the Immigration and Nationality Act and its implementing regulations, including those pertaining to the discipline of practitioners. 8 C.F.R. §1003.101, *et seq.*

6.    Defendant Executive Office for Immigration Review is responsible for *inter alia* managing the immigration courts throughout the United States under the auspices of the Office of the Chief Immigration Judge.

7.    Defendant U.S. Citizenship & Immigration Services is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration services

policies and priorities. It adjudicates applications for immigration benefits, including lawful

permanent residence, naturalization, asylum, and temporary protected status.

## JURISDICTION

8. Jurisdiction in this case is proper under 28 U.S.C. §§1331 and 1361, the general federal

question jurisdiction and mandamus statute; under 5 U.S.C. §701 *et seq.*, the Administrative

Procedure Act, and 28 U.S.C. §2201 *et seq.*, the Declaratory Judgment Act.    Relief is

requested pursuant to said statutes.

## VENUE

9. Venue is proper in this court pursuant to 28 U.S.C. §1391(e), in that this is an action against

officers and agencies of the United States in their official capacities, brought in the District

where a Defendant resides and where a substantial part of the events or omissions giving rise

to the Plaintiff's claim occurred.

## EXHAUSTION OF REMEDIES

10. Plaintiff has exhausted his administrative remedies to the extent required by law.  *See Darby v.

Cisneros,* 509 U.S. 137, 154 (1993) ("where the APA applies, an appeal to 'superior agency

authority' is a prerequisite to judicial review *only* when expressly required by statute or when

an agency rule requires appeal before review and the administrative action is made

inoperative pending that review."). The immediate suspension acts as a final agency decision

because it imposes discipline without a review of the merits of the basis, i.e., without due

process of law.

11. The Plaintiff filed a "Respondent's Response to 'Petition For Immediate Suspension' and

'Notice of Intent To Discipline'" wherein he argued that the Board was required to set aside

the order of immediate suspension because he had demonstrated "good cause" and that it

3

was in the "interest of justice to do so" in accordance with 8 C.F.R. §1003.103(a)(2). On March 26, 2008, the Board denied the request. The Plaintiff has no further recourse before the Board.

## PROCEDURAL HISTORY

12. Plaintiff is an attorney licensed to practice law by the State of California admitted on December 9, 1977 (California State Bar No.: 75605). He is presently an active member of the Bar authorized to practice law.

12 The Plaintiff almost exclusively practices federal immigration law, representing aliens seeking immigration benefits, aliens in removal/deportation proceedings, on appeal before the Board of Immigration Appeals and several of the federal district courts and courts of appeal. The Plaintiff's reputation in the community is for taking on complex cases representing aliens charged with asylum and marriage fraud, serious criminal offenses, as well as aliens who have lived for many years under final orders of deportation, removal or exclusion. Many of these aliens will have grave difficulty finding another attorney to accept or handle their cases.

13 As noted above, he was admitted to the Bar of the Ninth Circuit Court of Appeals on January 12, 1983 but resigned on June 26, 2007 with charges pending against him.

14 On February 14, 2008, the Office of the General Counsel for the Executive Office For Immigration Review filed with the Board of Immigration Appeals a "Petition For Immediate Suspension" and concurrently issued to the Plaintiff a "Notice of Intent To Discipline."

15 On February 20, 2008, the Department of Homeland Security through its Appellate Counsel, Eileen M. Connolly, moved to "broaden the scope of any immediate suspension so that it also applie[d]" to the Plaintiff's authority to practice before the Department of Homeland Security, specifically, Citizenship & Immigration Services.

4

16    On March 5, 2008, the Board of Immigration Appeals through Panel Members, Frederick D.
       Hess, Juan P. Osuna, and David B. Holmes, granted the Office of General Counsel's
       petition for immediate suspension and "hereby suspended" the Plaintiff from "the practice
       of law before the Board, the Immigration Courts, and the DHS pending final disposition of
       this proceeding."

17    On March 19, 2008, the Plaintiff responded to the Notice of Intent to Discipline and the
       Petition For Immediate Suspension. However, since March 5, 2008, the Plaintiff has been
       unable to appear before any federal Immigration Courts, the Board of Immigration Appeals
       and Department of Homeland Security and its agencies in any capacity. The Plaintiff almost
       exclusively practices federal immigration law and thus, the immediate suspension is
       tantamount to a final order of discipline notwithstanding the alleged "interim" nature of the
       suspension. The Board refused to set aside the immediate suspension order in a decision
       dated March 26, 2008.

## CAUSE OF ACTION

18.   Agency action "for which ther is no other adequate remedy in a court" is reviewable under
       the Administrative Procedure Act. 5 U.S.C. §704. *See, e.g., Bennett v. Spear,* 520 U.S. 154, 175
       (1997); *Japan Whaling Ass'n v. Am. Cetacean Society,* 478 U.S. 221, 230 n.4 (1986) (§704 creates
       a "right of action" absent clear and convincing evidence of legislative intention to preclude
       review).

19.   The U.S. Supreme Court has characterized disciplinary proceedings as "adversary
       proceedings of a quasi–criminal nature." *In Re Ruffalo,* 390 U.S. 544, 551 (1968). For this
       reason, "[a]lthough attorneys are not entitled to the full panoply of protections afforded to
       criminal defendants, they are 'entitled to procedural due process.'" *In re Surrick,* 338 F.3d
       224, 238 (3rd Cir. 2003) (*Circuit Judge Cowen dissenting*), *citing In re Ruffalo,* 390 U.S. at 550.

5

"Disbarment being the very serious business that it is, ample opportunity must be afforded to show cause why an accused practitioner should not be disbarred." *Theard v. United States,* 354 U.S. 278, 282 (1957).

20.    The basis for the Board's immediate suspension of the Plaintiff was his resignation from the Ninth Circuit Court of Appeals with disciplinary proceedings pending, which petitioning counsel, Jennifer J. Barnes, alleged included "an admission of misconduct." The Plaintiff respectfully submits that he demonstrated "good cause" justifying "set[ting] aside such order of immediate suspension [because] it appears in the interest of justice to do so" for a number of reasons, the most critical of which is that no sufficient "admission of misconduct" was made to justify imposing discipline. 8 C.F.R. §1003.103(a)(2). The Board refused to address any of the Plaintiff's meritorious arguments and instead refused to set aside the order on the basis of the order itself.

21.    The Plaintiff also alleged that "[t]here was such an infirmity of proof establishing the attorney's professional misconduct as to give rise to the clear conviction that the adjudicating official could not, consistent with his or her duty, accept as final the conclusion on that subject" and that "imposition of discipline by the adjudicating official would result in grave injustice." 8 C.F.R. §1003.103(b)(2)(ii) and (iii). In addition, as to the alleged admission of misconduct, the Plaintiff asserted that the "underlying disciplinary proceeding was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process." 8 C.F.R. §1003.103(b)(2)(i). *See also Selling v. Radford,* 243 U.S. 46 (1917).

22.    The Court has the authority under 5 U.S.C. §705 to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status quo or rights pending conclusion of the review proceedings." For the reasons that follow, the Court

should set aside the interim, immediate suspension until the Board of Immigration Appeals adjudicates the Notice of Intent To Discipline.

23.    5 U.S.C. §706 authorizes the Court to "hold unlawful and set aside agency action" which it finds to be *inter alia*: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "contrary to constitutional right, power, privilege, or immunity"; "in excess of statutory jurisdiction, authority, or limitations"; or "without observance of procedure required by law." 5 U.S.C. §706(2)(A)–(D).

23.    *There was no "admission of misconduct" and thus, no basis for "reciprocal discipline."*

a.    The basis of the underlying proceeding is an attempt by the Board of Immigration Appeals to impose reciprocal discipline.    8 C.F.R. §1003.103(b)(2) provides that in the case of summary proceedings "based upon a final order of disbarment or suspension, or a resignation with an admission of misconduct, (i.e., reciprocal discipline), a certified copy of a judgment of order of discipline shall establish a rebuttable presumption of the professional misconduct." The rule demonstrates that it refers expressly to "reciprocal discipline" and that the allegations of "misconduct" may be rebutted. Notably, the ABA Model Rules For Lawyer Disciplinary Enforcement[1] state that the "imposition of discipline or disability inactive status in one jurisdiction does not mean that every other jurisdiction in which the lawyer is admitted must necessarily impose discipline or disability inactive status." *Commentary, Rule 22, Model Rules For Lawyer Disciplinary Enforcement.*

---

[1] Cited in the Notice of Intent To Discipline issued concurrent with the Petition for Immediate Suspension, paragraph/allegation 18.

b.  Reciprocal discipline refers to discipline which is in some sense proportionally related to or that corresponds to the original discipline. The New York Supreme Court has held that "[i]n deciding on the appropriate sanction in reciprocal discipline matters, it is generally accepted that the State where the misconduct occurred has the greatest interest in the sanction imposed." *In re Whitehead*, 37 A.D.3d 86, 825 N.Y.S.2d 478 (N.Y.A.D. 2006), *citing Matter of Paul*, 308 A.D.2d 23, 763 N.Y.S.2d 247 (2003). The Court observed that the "disbarment imposed" in that matter "would be excessive based upon the facts and findings established here. Indeed," the Court went on, "in this State, if the sole misconduct was an isolated incident consisting of a non-venal but unauthorized invasion of funds entrusted to an attorney, resulting from the attorney's failure to familiarize himself with the proper procedures by which to obtain a fee award, the sanction would likely consist of a public censure or, possibly, a short suspension." *Id.* The Court noted "when the sanction in the home state deviates significantly from our precedent, this Court has departed from that general policy of deference." *Id.* These considerations apply here where the disciplining entity (Ninth Circuit) imposed a sanction on the basis of conduct which would not violate the other jurisdiction's rules (EOIR).

c.  The Ninth Circuit has discussed the distinction between imposition of direct discipline as opposed to imposition of reciprocal discipline. In reciprocal discipline cases, "an attorney's misconduct has already been adjudicated by another court or disciplinary agency. Thus, a court seeking to impose reciprocal discipline engages in a function far different from a court seeking

8

to impose discipline in the first instance." *In re Kramer*, 282 F.3d 721, 725 (9th Cir. 2002). Of course, this presumes that the underlying, or, originating matter was in fact adjudicated. Where there has been no adjudication, there can be no proportional reciprocal discipline.    The Plaintiff was not disciplined or suspended by the Ninth Circuit; he resigned in lieu of forcing the Court to prove the truth of the allegations by clear and convincing evidence, and that his conduct rose to the level of "conduct unbecoming" a member of the Bar of the Ninth Circuit.

d.  Discipline of the Plaintiff, if it were truly reciprocal, would include monetary sanctions, not suspension, immediate or otherwise. The term "misconduct" is a term of art referring to conduct which is not in conformance with prevailing laws or rules. Filing an extension six days before the deadline (instead of 7-days) or even 1 day before the deadline is simply not violative of the Board's rules where the Board allows an extension to be filed anytime prior to the deadline. Imposing discipline under these circumstances is in no sense reciprocal and further, amounts to imposition of discipline for no reason at all.

24.  *"There was such an infirmity of proof establishing the attorney's professional misconduct as to give rise to the clear conviction that the adjudicating official could not, consistent with his or her duty, accept as final the conclusion on that subject." 8 C.F.R. §1003.103(b)(2)(ii).*

a.  8 C.F.R. §1003.102 elucidates the various grounds for imposing disciplinary sanctions against an attorney. Among them is subsection (e), which provides for discipline if the attorney is "subject to a final order of disbarment or suspension, or has resigned with an admission of misconduct." 8 C.F.R. §1003.102(e)(1). It is important to note that the Plaintiff is not culpable of

9

any misconduct before this Board and has not been accused of any misconduct: the sole basis for the Notice of Intent To Discipline and the Petition For Immediate Suspension was the perception that misconduct was established or "admitted" below.

b.  The Plaintiff was neither suspended nor disbarred from the Ninth Circuit; he resigned rather than obligate the Court to prove the truth of the allegations at a protracted hearing by the clear and convincing evidence standard and that his conduct also rose to the level of "conduct unbecoming" a member of the Bar of the Ninth Circuit.  The hearing in the matter consisted of nothing more than the Plaintiff's formal resignation.  Obviously, there were no findings of fact or conclusions of law rendered by the Ninth Circuit, as there was no adjudication of the allegations on the merits.  Further, since all allegations in the OSC were vigorously contested and untested, discipline is inappropriate before the Board under the standards of the governing rules. Since none of the allegations in the OSC were ever adjudicated on the merits, they remained nothing more than unproven, unsubstantiated allegations that unlawfully blossomed into immediate suspension before the Board.

c.  The Office of General Counsel for the EOIR inappropriately seized upon a phrase in the Ninth Circuit's November 1, 2007 order.  The Circuit Court stated, "[f]or Respondent Guajardo's admitted violations of the court's rules and orders, the court imposes on Guajardo a monetary sanction of $5,000 plus the cost of the court reporter at the June 26, 2007 hearing, $450."  The "admitted violations," however, were negligible and certainly, did not amount to disciplinable offenses, particularly before the Board.    As has been

10

explained, the Plaintiff conceded that some of his extension requests were filed a few days prior to the briefing deadline, as opposed to the required 7-days before the briefing deadline; as well, he conceded that his extension requests failed to include a representation that the brief would be timely filed–the briefs were, however, nonetheless timely filed. There was no admission that any of the briefs were filed late, only that the request for an extension was filed later than required but still prior to the deadline for filing the brief. On the basis of this, the Board suspended the Plaintiff indefinitely when the same conduct before the Board fell within the Board's own rules.

d. The appropriate standard of proof in an attorney disciplinary case is almost uniformly the "clear and convincing standard." *See, e.g., Matter of Thalheim,* 853 F.2d 383, 389 (5th Cir. 1988) ("In attorney suspension and disbarment cases, the charges must be sustained by clear and convincing proof."); *Matter of Medrano,* 956 F.2d 101 (5th Cir. 1992). If a given set of facts gives rise to two inferences, the attorney gets the benefit of the doubt in a disciplinary case. *Himmell v State Bar* (1971) 4 Cal 3rd 786, 793-794. Plaintiff therefore cannot be disciplined for misconduct unless the evidence is "clear and convincing;" and he is entitled to the benefit of doubt. On the basis of nothing more than the unproven, untested, unadjudicated and vigorously contested allegations, the "clear and convincing" standard simply cannot be sustained and it would violate due process to discipline the Plaintiff under these circumstances.

25.     *"[U]nderlying proceeding was so lacking in notice" as to "constitute a deprivation of due process." 8 C.F.R. §1003.103.(b)(2)(i).*

a.  The Supreme Court stated in *In Re Ruffalo*, 390 U.S. 544, 554 (1968), that the "relevant inquiry in appraising a decision to disbar is whether the attorney stricken from the rolls can be deemed to have been **on notice that the courts would condemn the conduct for which he was removed**" (*emphasis added*). A federal court is "obligated to determine for itself the facts of the attorney's conduct and whether that conduct had been so grievous as to require disbarment." *Id., at* 553, *citing Theard v. United States*. "I would hold that a federal court may not deprive an attorney of an opportunity to practice his profession on the basis of a determination after the fact that conduct is unethical if responsible attorneys would differ in appraising the propriety of that conduct." *Id., at* 556.

b.  This calls into question efforts at ejecting the Plaintiff on the basis of conduct, which reasonable people would not believe could result in such a sanction. Although the Plaintiff's motions for an enlargement of time to file opening briefs *should* have fully complied with all technical requirements, neither this Board nor the Ninth Circuit in the underlying proceeding, could cite to any prejudice on the part of the Court itself or the opposing party in the matter. In fact, the Plaintiff explained in his lengthy response that the same conduct for which it sought to discipline the Plaintiff, was accepted in the normal course of business from the Government in the very same cases.

c.  In virtually every single case cited by the Ninth Circuit in the OSC pertaining to technical violations of the law, the opposing party was "guilty" of the same offending conduct as alleged against the Plaintiff. How can it be said

12

that the Plaintiff was on notice that filing a motion for an extension 6 days before the due date of the brief (as opposed to 7-days before the brief's due date) was conduct for which the Court could or would consider sanctioning the Plaintiff? Presumably for this reason, the Court imposed a fine and nothing else[2]. In addition, it is important to note that the motions were nonetheless granted by the Court and in the decisions, the Plaintiff was never put on notice that the requests were deficient except that they were not filed 7-days prior, again, conduct which is well within the Board's own rules.

26.        *The Board's immediate suspension violates the Plaintiff's due process and amounts to an unlawful taking without due process.*

a.    According to the publication in the Federal Register amending the rules and procedures concerning professional conduct for attorneys and representatives before EOIR, an attorney cannot be suspended "based on mere allegations of misconduct." 65 Federal Register 39513, 39516 (June 27, 2000). The final rule states that the immediate suspension provision "is designed to protect the public from practitioners who have a criminal conviction, are no longer in 'good standing' as set forth in 8 C.F.R. 1.1(f), or who have otherwise forfeited or encumbered their law licenses." *Id.* The drafters took issue with the possibility that mere allegations could result in immediate suspension: "Rather, based upon facts proven by the requisite high standard of proof ('clear and convincing evidence' in most disciplinary matters and 'beyond a reasonable doubt' in criminal matters) and applicable

---

[2] The Board has the authority to impose a broad range of sanctions including: permanent expulsion; suspension; "[p]ublic or private censure"; or "[s]uch other disciplinary sanctions as the adjudicating official or the Board deems appropriate." 8 C.F.R. §1003.101(a)(1)–(4). Presumably, the latter could include sanctions in the form of monetary penalties.

law, a state or Federal court has already made a determination that the practitioner has engaged in serious misconduct." *Id.*

b.  The Board further reasoned that "a rule that would permit a practitioner who has been criminally convicted of a serious crime to continue to practice before the Board, the Immigration Courts, or the Service pending all appeals of the underlying matter would expose the court's proceedings to the intervention of disqualified, unfit practitioners and subject clients to unnecessary risk." *Id.*

c.  The immediate suspension provision was clearly misapplied to the Plaintiff. Here, the Plaintiff was immediately suspended based on nothing more than "mere" allegations in an OSC issued by the Ninth Circuit on April 19, 2006. The only "admitted" violations were of technical infractions which do not violate the Board's or the Executive Office for Immigration Review's own rules. Although the protection of the public from unscrupulous practitioners is a noble undertaking, it was clearly not the basis for the Plaintiff's immediate suspension.

d.  The Board's immediate suspension renders quaint the right to counsel. According to 8 U.S.C. §1229a(b)(4)(A), an "alien shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings." The Government's unilateral action without due process of law has eviscerated the sacred attorney-client relationship that the Plaintiff has developed with his clients over the course of, in some instances, many, many years. The sanctity of this relationship cannot be understated in the immigration

14

context. As the Ninth Circuit has observed, "[b]ecause deportation "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom[,] ... [m]eticulous care must be exercised lest the procedures by which [an alien] is deprived of that liberty not meet the essential standards of fairness."" *Hernandez-Gil v. Gonzales*, 476 F.3d 803, 806 (9th Cir. 2007), *citing Bridges v. Wixon*, 326 U.S. 135, 154 (1945). "One way we ensure that the 'standards of fairness' are met is by guaranteeing that aliens have the opportunity to be represented by counsel. The high stakes of a removal proceeding and the maze of immigration rules and regulations make evident the necessity of the right to counsel." *Id., citing Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005). "Indeed, it is difficult to imagine a layman more lacking in skill or more in need of the guiding hand of counsel, than an alien who often possesses the most minimal of educations and must frequently be heard not in the alien's own voice and native tongue, but rather through an interpreter." *Id., citing Powell v. Alabama*, 287 U.S. 45, 68-69 (1932).

e.  The Plaintiff remains an attorney licensed by the State of California and until the unforeseen immediate suspension, was actively, aggressively and successfully representing his clients and obtaining positive results. The Plaintiff represents aliens in predicaments who have few options for representation. The immediate suspension has left them between Scylla and Charybdis. The complexity and seriousness of their cases leaves them without counsel and with only a limited number of attorneys who will accept their cases. As previously noted, the Plaintiff is well known for taking on

15

cases that involve serious allegations of asylum and marital fraud, as well as clients who have for many years been living in the shadows under final orders of deportation and removal. Many of his clients also stand convicted of aggravated felony convictions under immigration law and rely on his expertise and his litigation strategy in having such convictions vacated. For some of his clients, the Plaintiff's immediate suspension leaves them without representation. To be sure, the Board of Immigration Appeals has this authority; however, the authority should be exercised only in compliance with due process.

f. Few immigration attorneys are as devoted to their clients as is the Plaintiff and few have had such success on behalf of unpopular clientele with exceedingly complex cases. The EOIR demonstrates that it is more interested in settling scores, rather than protecting the public. While notarios, immigration consultants, suspended attorneys[3] and attorneys with little knowledge of immigration law and procedure, practice unimpeded before the Agency, this Plaintiff is effectively disciplined without notice and an opportunity to respond (notice after discipline has already been imposed is not notice at all) and on the basis of mere allegations.

g. The Defendants will perhaps point to the Ninth Circuit's Order To Show Cause and assert that even if the allegedly "admitted violations" are insufficient to sustain the immediate suspension, the OSC is rife with

---

[3] For example, on July 28, 2005, local attorney Madan Mohan Singh Ahluwalia (California Bar #175664) was ordered suspended for one year, stayed, placed on two years of probation with an actual 30-day suspension and ordered to take courses and make restitution. Despite this order, Bar Counsel never placed Mr. Ahluwalia on the List of Disciplined Practitioners and in fact, took no action at all. Against the Plaintiff, however, EOIR updated its list of disciplined practitioners on March 5, 2008, the same date it immediately suspended the Plaintiff.

violations and comprises numerous cases. This would be error for more than one reason. First of all, in all of the cases cited in the OSC, none of the affected parties' substantive rights were violated. The violations alleged were technical violations that did not affect the outcome of the proceedings for any of the Petitioners. Even the case cited on page 8, *Aguila v. Ridge,* No.: 04-15667, which was dismissed for failure to prosecute, did not affect the alien's rights because the Petitioner in that matter had already been removed when the Ninth Circuit denied his stay. As well, he had been convicted for a violation of California Penal Code §288(c), Lewd or Lascivious Acts with a child of 14 or 15 years. This offense is clearly an aggravated felony under immigration law, *see* 8 U.S.C. §1101(a)(43)(A), and the Petitioner was ineligible for any relief from removal. The Petitioner was well aware that he would not be able to remain in the United States and that the law was clear that he was ineligible for relief and would never be able to return to the United States. In fact, the Ninth Circuit was concerned with the volume of cases that the Plaintiff was filing. The Court even took issue with the Plaintiff's "timely" filings for extensions. *See OSC, page* 8.

h. More importantly, however, the OSC and the cases contained therein were not the basis for the immediate suspension. The Board's immediate suspension is clearly premised solely on the fact of the resignation and the "admitted" violations. It is not for this Court to substitute its own judgment or provide its own reasoning for why the Board's actions should be upheld. *See, e.g., SEC v. Chenery,* 332 U.S. 194, 197 (1947) ("If the administrative action is to be tested by the basis upon which it purports to rest, that basis

must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at a theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive. In other words, 'we must know what a decision means before the duty becomes ours to say whether it is right or wrong.'"); *Yatskin v. INS*, 255 F.3d 5, 10-11 (1st Cir. 2001) ("Following administrative law principles, a reviewing court should judge the action of an administrative agency based only on reasoning provided by the agency, and not based on grounds constructed by the reviewing court."). The Court "must decide whether to grant or deny the petition for review based on the Board's reasoning rather than [its] independent analysis of the record." *Azanor v. Ashcroft*, 364 F.3d 1013 (9th Cir. 2004).

i.    "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean,* 234 U.S. 385, 394 (1914). "But when notice is a person's due, process which is a mere gesture is not due process." *Mullane v. Central Hanover Bank & Trust Co.,* 399 U.S. 306, 315 (1950). "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id., at* 313. It is undisputed that "[n]ot every deprivation of liberty or properly requires a predeprivation hearing or a federal remedy." *Ramsey v. Board of Educ.,* 844 F.2d 1268, 1272 (6th Cir. 1988), *quoted in Williams v. Com. Of Ky.,* 24 F.3d 1526, 1539 (6th Cir. 1993). Here, the Plaintiff has been deprived of his

livelihood on the basis of unproven allegations and an admission that he filed certain extensions of time to file opening briefs late but still prior to the deadline or due date for the filing of the briefs. Such conduct is permitted under the Board's own rules. Thus, the immediate suspension without prior resolution of the allegations amounts to discipline for no reason at all because the "misconduct" being punished does not violate the Board's own rules. For this reason, the protection of the public is insufficient to render the post-deprivation process sufficient to satisfy due process because it is not a danger to the public for the Board to immediately suspend an attorney when the conduct that forms the basis for the suspension is conduct perfectly acceptable by the suspending entity.

27. *"The imposition of discipline by the adjudicating official would result in grave injustice." 8 C.F.R. §1003.103(b)(2)(iii).*

a. The Supreme Court of the United States regarding this ground observed that there may be "grave reason[s]" which "convince us that to allow the natural consequences of the judgment to have their effect," i.e., to impose reciprocal discipline, would "conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained to do so." *Selling v. Radford, supra, at* 51. The Plaintiff resigned from the Ninth Circuit and withdrew from all of those matters pending before that Court. He conceded only the most minor, technical infractions for which there was no harm or prejudice to anybody, most importantly, the client. In lieu of a protracted proceeding before the Ninth Circuit, the Plaintiff resigned and saved the Court substantial expense and effort, relieving the Court of the obligation to prove the truth of the

19

allegations by *clear and convincing* evidence. The Ninth Circuit was in fact spared the responsibility and evidentiary burden of demonstrating that the allegations against the Plaintiff were true and if so, that they rose to the level of "conduct unbecoming a member of the court's bar" as required by F.R.A.P. 46(b)(1)(B).

b. The *Kramer* Court stated "we inquire only whether the punishment imposed by another disciplinary authority or court was so ill-fitted to an attorney's adjudicated misconduct that reciprocal disbarment would result in grave injustice." 282 F.3d at 727. This is clearly met here where there was no adjudication of the underlying allegations and the only concession by the Plaintiff was that he failed to technically comply with a local rule that is rarely and only selectively enforced (and which is not violative of the Board's rules). Under these circumstances, suspension by the Board would not only be disproportionate to the underlying resignation (and thus not in any meaningful sense, reciprocal) but it would also result in grave injustice to the Plaintiff within the meaning of 8 C.F.R. §1003.103(b)(2)(iii). EOIR counsel seeks to disbar the Plaintiff when he was not suspended or disbarred by the Ninth Circuit.

28.    *The Board plainly abused its discretion in ruling on the Plaintiff's request to set aside the order.*

a. On March 26, 2008, the Board issued its decision on the Plaintiff's request that the immediate suspension order be set-aside for good cause shown. The multitudinous arguments propounded by Plaintiff were promptly and simplistically dismissed in a decision comprising approximately one page of text. However, the substance of the Board's decision as to the request to set

aside the immediate suspension garnered solely one paragraph of discussion. A review of this paragraph compels the conclusion that the Board abused its discretion and the matter must be overturned or remanded for a proper analysis of the Plaintiff's arguments.

b. The Board's decision consists of four paragraphs. The first paragraph discusses the basis for the Board's decision to institute disciplinary proceedings, namely, the Plaintiff's resignation from the Bar of the Ninth Circuit. The second paragraph describes the Office of General Counsel's petition for immediate suspension. The final paragraph merely refers the matter to the Office of the Chief Immigration Judge for adjudication of the issues. It is the penultimate paragraph in which the Board actually addresses the request that the order of immediate suspension be vacated.

c. The Board's analysis of the Plaintiff's arguments in favor of setting aside the order of immediate suspension comprises in effect a single sentence. The paragraph reads as follows:

> "The respondent seeks to have the Board reconsider its March 5, 2008, decision. The motion will be denied. An immediate suspension order may bet set aside '[u]pon good cause shown...when it appears in the interest of justice to do so'. 8 C.F.R. §1003.103(a)(2). However, as the respondent has resigned from the Ninth Circuit bar, after admitting violations of the Court's rules and orders, *see* Ninth Circuit's Nov. 1, 2007, order, there is no good cause for setting aside the immediate suspension order. 8 C.F.R. §1003.103(a) (immediate suspension order appropriate where a respondent has resigned with an admission of misconduct from a federal court)."

The regulations provide that an order of immediate suspension may be "set aside" upon "good cause shown" when it "appears in the interest of justice

to do so." 8 C.F.R. §1003.103(a)(2). According to the Board's reasoning, because the respondent resigned from the Ninth Circuit Bar, "there is no good cause for setting aside the immediate suspension order." This is a classic example of circular reasoning. The Board began with the conclusion, peered through fact of the resignation, and then returned full circle to the same conclusion. The Board's belief in the central claim is both the starting and terminal point of its flawed, anemic reasoning.

d.   The Board's conclusion is essentially a *non sequitur*. The Board's decision could be rewritten to read: "Because the Plaintiff was immediately suspended, there is no good cause for setting aside the order of immediate suspension." But what about the Plaintiff's manifold arguments? The Plaintiff's case for demonstrating "good cause"? The Plaintiff's claim that it is in the "interest of justice" to set aside the order? The Board completely failed to address any of the arguments in favor of setting aside the order of immediate suspension. Instead, the Board reasoned simplistically that the immediate suspension order stays in place because it, the Board, said so. This is completely arbitrary and whimsical.

e.   "The BIA abuses its discretion when it acts 'arbitrarily, irrationally, or contrary to law.'" *Franco–Rosendo v. Gonzales,* 454 F.3d 965, 966 (9th Cir. 2006), *citing Chete Juarez v. Ashcroft,* 376 F.3d 944, 947 (9th Cir. 2004). "The BIA abuses its discretion when it 'provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say, where the Board has acted in an arbitrary or capricious manner.'" *Norani v. Gonzales,* 451 F.3d 292, 293

(2nd Cir. 2006), *citing Kaur v. BIA,* 413 F.3d 232, 233–34 (2nd Cir. 2005). *See also Abu Hasirah v. DHS*, 478 F.3d 474, 477 (2nd Cir. 2007) ("The standard of abuse of discretion is satisfied where the agency, in making a discretionary determination, has misunderstood or misapplied the governing law.").

f.  The Board offered no reasoning at all for why it felt that the Plaintiff did not demonstrate "good cause" to set aside the order of immediate suspension. It is devoid of any reasoning at all. It is a violation of due process for the Board to offer no reason at all for its decision. The Plaintiff is entitled to an explication of the basis for the Board's decision to prematurely devastate the Plaintiff's practice without any notice or opportunity to be heard. When the Plaintiff presented his case, the Board responded by ruling that there was no "good cause" because there was…well…no good cause. This is arbitrary and capricious decision-making. The Board's decision must be reversed.

29.  *The Board and EOIR Office of General Counsel selectively enforce the immediate suspension rules against attorneys whom they are biased against.*

a.  It is apparent that the EOIR's Office of General Counsel and the Board are biased against this Plaintiff. EOIR General Counsel and the Board selectively use the immediate suspension rules, enforcing them only against attorneys with whom they have a score to settle or on the basis of some unknown criteria. As an example, on July 28, 2005, local attorney Madan Mohan Singh Ahluwalia (California Bar #175664) was ordered suspended for one year, stayed, placed on two years of probation with an actual 30-day suspension and ordered to take courses and make restitution. Despite this order of actual suspension–not resignation–Bar Counsel never placed Mr. Ahluwalia on the List of Disciplined Practitioners and in fact, took no action

23

at all. Against the Respondent, however, EOIR updated its list of disciplined practitioners on March 5, 2008, the same date it immediately suspended the Plaintiff.

b. Similarly, the Ninth Circuit accepted another immigration attorney's resignation with charges pending in *Matter of Carolyn Elizabeth Reinholdt*, in case number 06-8000. The December 4, 2006 order stated that in order to "remedy the conduct described in the report and recommendation," Ms. Reinholdt was "encouraged to undertake continuing legal education in substantive immigration law, legal ethics, and law office management." The order was served on the California State Bar and EOIR for "appropriate further investigation." No action was taken by EOIR General Counsel or the Board.

c. On February 24, 2006, Charles V. Stebley resigned from the Ninth Circuit with particularly egregious charges pending against him. (Docket No.: 05-80101). Because Mr. Stebley never responded to the Court's Order To Show Cause, the Court accepted the resignation and on March 11, 2008, the Court ordered its orders and letters be referred to the State Bar of California. Despite the resignation with charges pending and the egregious nature of the allegations against Stebley, including filing numerous opening briefs many months late, EOIR General Counsel has taken no action against Stebley.

d. On September 23, 2005, the Appellate Commissioner adopted its report and recommendation and found that the attorney's "non-objection serves to admit that he has committed the violations of the court's rules and orders and ethical rules set forth in the report" and therefore imposed sanctions.

(Docket No.: 05-80025). The attorney, Frank P. Sprouls, was placed on probation. The admissions of misconduct were significant. Nonetheless, again, the Board and EOIR General Counsel refused to act and did not impose discipline on Sprouls.

e.  There are undoubtedly numerous attorneys who have resigned or been suspended and yet, remain eligible to practice before the EOIR and DHS. What is the Board's and EOIR General Counsel's reasoning for applying the rules so stringently against the Plaintiff and yet, taking no action against these other attorneys? The Plaintiff is a vocal advocate on behalf of an extremely unpopular clientele, many of whom are accused of marriage fraud, asylum fraud, and serious criminal offenses. He practices aggressive litigation on their behalf and has often invoked the ire of the Immigration Judges in San Francisco, California. He also files many motions to reopen, some addressing very novel issues, with the Board of Immigration Appeals, many of which are denied by the same Board members who ordered his immediate suspension and refused to set aside the order–Frederick D. Hess, David B. Holmes and Edward R. Grant. The Plaintiff requests discovery in order to identify whether the Board and EOIR General Counsel are using improper criteria or bias in enforcing the immediate suspension rules.

30.  *The Plaintiff is Entitled to a Temporary Restraining Order/Preliminary Injunction Preventing the Board and EOIR From Imposing the Immediate Suspension Pending Conclusion of the Disciplinary Proceedings.*

a.  The Plaintiff meets the criteria for a preliminary injunction enjoining the Defendants from immediately suspending the Plaintiff pending the conclusion of the disciplinary proceedings. "The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the

25

absence of its issuance he will suffer irreparable injury and also that he is likely to prevail on the merits." *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931 (1975). "[T]his test would demand, as an essential element, demonstration of a strong likelihood of success on the merits." *Reno v. American-Arab Anti-Discrimination Committee,* 525 U.S. 471, 494 (1999). "In this circuit, preliminary injunctive relief is available to a party who demonstrates either (1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardship tips in its favor. These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.,* 204 F.3d 867, 874 (9th Cir. 2000), *citing Arcamuzi v. Continental Air Lines, Inc.,* 819 F.2d 935, 937 (9th Cir. 1987).

b. As described above, the Board's refusal to set aside the immediate suspension was based on circular reasoning and whim. It is arbitrary and capricious and merits being set aside if for no other reason than that it fails to explain its rationale. It is the raw exercise of power without foundation in the rule of law. The Plaintiff has clearly raised "serious questions" and a probability of success on the merits–again, the Board's decision provides no reasoning at all for why the Plaintiff failed to show "good cause." In this instance, it is equally clear that the balance of hardships tips heavily in favor of the Plaintiff.

c. The Plaintiff, on the other hand, has already been severely harmed by the immediate suspension without due process. He is unable to practice before

26

the Agency in any capacity; he has gone to great expense to assure his hundreds of clients have been represented at all levels in light of his suspension; he has had to hire new staff and counsel; he has lost some clients due to the capricious immediate suspension; he has in short, lost his livelihood, all without due process or an opportunity to be heard. Clearly, a preliminary injunction and temporary restraining order is appropriate.

PRAYER

31.    WHEREFORE, in view of the arguments and authority noted herein, Plaintiff respectfully prays that the Defendants be cited to appear herein and that, upon due consideration, the Court enter an order:

a. Assuming jurisdiction over this matter;

b. Immediately issue a preliminary injunction setting aside the order of immediate suspension from March 5, 2008, pending conclusion of the disciplinary proceedings as improperly issued and unsubstantiated;

c. Issue a temporary restraining order preventing the Defendants from enforcing the order of immediate suspension against the Plaintiff pending conclusion of these proceedings;

d. Awarding Plaintiff reasonable attorney's fees; and

e. Granting such other relief at law and in equity as justice may require.

I remain, respectfully yours,

MARTIN RESENDEZ GUAJARDO
Plaintiff, *in pro per*

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

---

File:   D2007-319

Date:    **MAR   5 2008**

In re:   MARTIN RESENDEZ GUAJARDO, ATTORNEY

IN PRACTITIONER DISCIPLINARY PROCEEDINGS

PETITION FOR IMMEDIATE SUSPENSION

ON BEHALF OF GENERAL COUNSEL: Scott Anderson, Deputy Bar Counsel

ON BEHALF OF DHS:   Eileen M. Connolly, Appellate Counsel

ORDER:

PER CURIAM. On November 1, 2007, the United States Court of Appeals for the Ninth Circuit issued an order that "accepts respondent Guajardo's resignation from the Ninth Circuit bar with disciplinary proceedings pending." The court also stated that the respondent "admitted violations of the court's rules and orders." The court declined to reconsider its order on January 30, 2008.

Consequently, on February 14, 2008, the Office of General Counsel for the Executive Office for Immigration Review petitioned for the respondent's immediate suspension from practice before the Board of Immigration Appeals and the Immigration Courts. On February 20, 2008, the Department of Homeland Security (the "DHS") asked that the respondent be similarly suspended from practice before that agency.

The petition is granted, and the respondent is hereby suspended, absent a showing of good cause, from the practice of law before the Board, the Immigration Courts, and the DHS pending final disposition of this proceeding. *See* 8 C.F.R. § 1003.103(a).

Accordingly, the respondent is directed to promptly notify, in writing, any clients with cases currently pending before the Board, the Immigration Courts, or the DHS that the respondent has been suspended from practicing before these bodies. The respondent shall maintain records to evidence compliance with this order. Moreover, the Board directs that the contents of this notice be made available to the public, including at Immigration Courts and appropriate offices of the DHS.

FOR THE BOARD

## VERIFICATION

I, Martin Resendez Guajardo, declare as follows:

1.  I am the Plaintiff in this matter;

2.  I have personal knowledge of the facts contained in the foregoing complaint and if called on to testify as to these matters would do so competently;

3.  I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April ___11___, 2008

_____
MARTIN RESENDEZ GUAJARDO
Plaintiff

28

§ JS 44 (Rev. 12/07) (cand rev 1-16-08)
## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

### I. (a) PLAINTIFFS

MARTIN RESENDEZ GUAJARDO

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

San Francisco County

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Law Office of Martin Resendez Guajardo
555 Clay Street, San Francisco, CA
(415) 398-3852

### DEFENDANTS

Michael B. Mukasey, Attorney General
Board of Immigration Appeals
Executive Office for Immigration Review

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

U.S. Attorney Northern District of CA
450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102

E-filing                    PJH ADR

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      (U.S. Government Not a Party)

☒ 2  U.S. Government
      Defendant

☐ 4  Diversity
      (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | ☐ 871 IRS—Third Party | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | ☐ 900 Appeal of Fee |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Determination |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | Under Equal Access |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | to Justice |
| | Other | | Alien Detainee | | ☐ 950 Constitutionality of |
| | ☐ 440 Other Civil Rights | | ☒ 465 Other Immigration | | State Statutes |
| | | | Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     another district
     (specify)

☐ 6 Multidistrict
     Litigation

☐ 7 Appeal to District
     Judge from
     Magistrate
     Judgment

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1331, 1361, 2201; 5 USC 702
Brief description of cause:
Complaint for injunctive and declaratory relief

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes ☒ No

### VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

### IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE

DATE  4/11/08

SIGNATURE OF ATTORNEY OF RECORD

Court Name: U.S. District Court, NDCA
Division: 3
Receipt Number: 34611018072
Cashier ID: almaceh
Transaction Date: 04/11/2008
Payer Name: MARTIN R GUAJARDO
--------------------------------
CIVIL FILING FEE
 For: MARTIN R GUAJARDO
 Case/Party: D-CAN-3-08-CV-001929-001
 Amount:        $350.00
--------------------------------
CHECK
 Check/Money Order Num: 4943
 Amt Tendered: $350.00
--------------------------------
 Total Due:       $350.00
 Total Tendered: $350.00
 Change Amt:      $0.00

PJH


Checks and drafts are accepted
subject to collections and full
credit will only be given when the
check or draft has been accepted by
the financial institution on which
it was drawn.